# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANTHONY ROMERO,

    Plaintiff,

vs.                                                                                                       Civ. No. 01-180 WJ/WWD

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

### Proposed Findings

        This matter comes before the Court upon Plaintiff's Motion to Reverse the Administrative Decision **[Doc. 6]**, filed December 10, 2001. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for a period of disability and social security disability insurance benefits ("DIB"). Plaintiff, Mr. Romero, alleges a disability which commenced February 15, 1991 due to injuries to his neck and lower back and arthritis in his right arm. Tr. at 45.

        1. Plaintiff has a high school education and worked as a delivery truck driver from 1975 to 1991. Plaintiff was 46 years old at the time of the ALJ's decision.

        2. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). The Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

The Court may also reverse the Commissioner's decision if the ALJ failed to provide sufficient reasoning for it to determine whether the proper legal analysis was conducted. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984).

3. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in her credibility assessment, and (2) the ALJ erred in finding that Mr. Romero could perform a full range of light work and in applying the grids to find that Mr. Romero was not disabled. Plaintiff further alleges that he is disabled because he is unable to perform work at any exertional level.

4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

5. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.

6. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than his past

relevant work.  Thompson, 987 F.2d at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

7. On February 15, 1991, Plaintiff was injured at work when a warehouse bay door was lowered, striking him on the head.  Tr. at 192.  Dr. W. K. Harrison Watson examined Plaintiff and determined that he had sustained a closed head injury with concussion, cervical strain and thoracolumbar strain.  Id.  Dr. Watson further determined that Plaintiff was "[u]nfit for duty" at that time.  Id.  During the months following his injury, Plaintiff was treated for his injuries with a variety of medications (including Naprosyn, Cytotec, Darvocet, Chlorzoxazone, Oxycodone with Acetaminophen, and Salsalate), rest, physical therapy, chiropractic manipulations and a TENS unit.  Tr. at 146, 173, 175, 180, 190, 213.

8. On September 13, 1991, Dr. Robert Rutschman determined that Plaintiff had reached maximum medical improvement with respect to his cervical and lumbar injuries and ordered that a functional capacity evaluation ("FCE") be performed.  Tr. at 110.  On October 3, 1991, a FCE was performed by Kale Isaacson, P.T.  Tr. at 120-32.  According to the therapist, the results of the FCE indicated that, in a four hour workday, Mr. Romero could: (a) sit for four hours in 30

3

minute durations, (b) stand for one hour in 10 minute durations, and (c) walk for four hours, for occasional, moderate distances. Tr. at 120.

9. Plaintiff testified that his most severe physical problems involve his back, neck and right shoulder. Tr. at 249. Plaintiff stated that he can lift "about ten pounds, maybe a little more . . . . [b]ut not for long periods of time." Id. Plaintiff further testified that he could sit for up to 30 minutes at a time, stand for about 10 minutes and walk for about 15 minutes at a time. Tr. at 252-54. Plaintiff explained that if he exceeds the above limits he experiences muscle spasms, back and leg pain and fatigue. Id. Plaintiff stated that the primary reasons he is unable to hold a job include a lack of "longevity" enabling him "to continue to [] do what I was supposed to do," fatigue and pain. Tr. at 264.

10. At step four of the sequential evaluation process, the ALJ found that Plaintiff could not perform his past relevant work because he was unable to perform the "heavy physical demands" of the job of delivery truck driver. Tr. at 16. However, at step five, the ALJ concluded that because Mr. Romero "can perform the demands of the full range of light work, a finding of not disabled is directed by [the grids]." Tr. at 17.

**First Alleged Error - Credibility**

11. In evaluating the Plaintiff's testimony, the ALJ did not consider Mr. Romero's complaints regarding pain and functional limitations to be credible. Tr. at 16. The ALJ's explanation for her credibility finding, set forth in its entirety, reads as follows:

> Given the claimant's minimal medical findings, use of only over-the-counter medication, lack of complaints when seen by Dr. Mawhorter, and the assessments offered by various physicians of record, I do not find the claimant's testimony concerning his pain and functional limitations credible.

4

Id. Plaintiff contends that the ALJ's credibility finding is erroneous and unsupported by substantial evidence.

12. The ALJ discounted Plaintiff's credibility, in part, because Mr. Romero used "only over-the-counter [OTC] medication." Tr. at 16. The ALJ may scrutinize a claimant's attempts to obtain pain relief. See Simmonds v. Massanari, 160 F.Supp.2d 1235 (D.Kan. 2001) (finding that the ALJ properly considered whether plaintiff was involved with a significant pain medication regime). Furthermore, the ALJ was entitled to discount Mr. Romero's credibility based on a finding that he used only OTC medication. See Rice v. Apfel, 990 F. Supp. 1289, 1294 (D.Kan. 1997) (finding that the plaintiff's use of only non-prescription medications to relieve pain was inconsistent with her allegations of disabling pain and tended to support the ALJ's credibility finding); Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir.1988) (cited in Rice, 990 F. Supp. at 1294) (noting that non-aggressive treatment is inconsistent with severe disability allegations).

13. However, in finding that Mr. Romero used only non-prescription medication, the ALJ apparently relied on a mischaracterization of Mr. Romero's testimony. The ALJ summarized Plaintiff's testimony as follows: "[Mr. Romero] stated that prescription medications have been damaging his liver and kidneys, so he only takes over-the-counter aspirin." Tr. at 16 (emphasis added). Mr. Romero did testify that he had to discontinue certain medication because of liver and kidney damage.[1] Tr. at 249-50. However, Mr. Romero also testified that currently "the only

---

[1] Mr. Romero's testimony on this issue finds some support in the record. See Progress Note by Dr. Mawhorter, Tr. at 146 (noting that Mr. Romero's abnormal liver function tests "could be secondary to the Naprosyn" and switching him to Disalcid (trade name for salsalate) as an alternative). However, the ALJ did not address this issue in assessing Plaintiff's pain regime.

5

[medication] I take is Salsalate and over-the-counter like aspirins and stuff like that." Tr. at 250 (emphasis added). Salsalate is a prescription medication. See PHYSICIANS' DESK REFERENCE 1981 (56th ed. 2002) (describing salsalate as "Rx only"); DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1107 (26th ed. 1981) (indicating that the symbol "Rx" represents the word "prescription"). Thus, the ALJ incorrectly represented Mr. Romero's testimony with respect to his use of prescription medication.

14. The ALJ's credibility analysis is of particular importance in this case because of its potential impact at step four[2] and step five of the sequential evaluation. An ALJ may not rely conclusively on the grids [at step five] unless she finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (emphasis added). Each of these findings must be supported by substantial evidence. Id. Here, the ALJ relied on the grids at step five to determine that Plaintiff was not disabled.

15. The ALJ's reliance on the grids suggest that she either discounted Mr. Romero's pain complaints entirely, or found that any credible pain did not significantly limit Mr. Romero's ability to perform the full range of light work. See Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988) ("[T]he grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC category on a

---

[2] Relevant regulations require the adjudicator to consider pain in evaluating residual functional capacity. See 20 C.F.R. §§404.1545 & 416.945. Social security rulings require that the RFC assessment must be based on all of the relevant evidence in the case record. Pain symptoms are specifically included in the factors to be considered. See SSR 96-8p.

6

sustained basis."). In any event, the Court does not know how much weight the ALJ afforded the mischaracterization of Plaintiff's testimony in arriving at her finding of noncredibility. A finding based on an inaccurate understanding of testimony is suspect and cannot serve as substantial evidence.

16. The ALJ also pointed to the "claimant's minimal medical findings" and "assessments offered by various physicians" as reasons for the conclusion that Mr. Romero's testimony lacked credibility. However, given the circumstances of this case, I find that these broad references to a large portion of the record fail to sufficiently articulate the ALJ's reasoning. "The reasons for the credibility finding must be grounded in the evidence and articulated in the . . . decision." SSR 96-7p. Moreover, the ALJ's decision "must contain <u>specific</u> reasons for the finding on credibility, supported by the evidence in the case record, and must be <u>sufficiently specific to make clear</u> . . . the weight the [ALJ] gave to the individual's statements and the reasons for that weight." <u>Id.</u> (emphasis added). The ALJ's reference to "minimal medical findings" and "assessments by various physicians," without more, does not assist the Court to identify the weight given to Mr. Romero's complaints and the ALJ's reasons for that weight.

17. Consequently, three of the four reasons given by the ALJ as justification for a finding of noncredibility are questionable because they are either based on an underlying inaccuracy or are lacking in specificity. "[A] credibility assessment requires consideration of all the pertinent factors in combination." <u>Romero v. Apfel</u>, No. 99-2141 (10th Cir. 7/18/2000) (finding that where several factors are unsupported by the record, the court is precluded from weighing the remaining factors to determine whether they are sufficient to support the ALJ's credibility finding). Moreover, in light of the impact of the ALJ's credibility finding on the assessment of the Plaintiff's residual

7

functional capacity and the use of the grids at step five, this matter should be remanded for a reassessment of the Plaintiff's credibility.

18. In remanding for a reassessment of credibility, the Court does not intend to dictate any result, nor do we mean to imply that Mr. Romero's complaints are necessarily credible. We require only that the ALJ's findings be sufficiently specific and supported by substantial evidence in the record.

**Second Alleged Error - Residual Functional Capacity and Application of the Grids**

19. Plaintiff alleges that the ALJ erred when she determined that Mr. Romero can perform the demands of the full range of light work. First, Plaintiff contends that the ALJ's finding is not supported by substantial evidence. Second, Plaintiff argues that the ALJ erroneously ignored the assessment of Mr. Romero's work-related abilities contained in the FCE. Finally, Plaintiff contends that the ALJ erred because she failed to provide a "narrative discussion" of the evidence supporting her finding that Mr. Romero can perform the full range of light work. Because I find that this matter should be remanded for further proceedings based on Plaintiff's latter two assertions, I find it unnecessary to address Plaintiff's first assertion at this time.

20. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related . . . activities in a work setting on a regular and continuing basis . . . . [and must] identify the individual's functional limitations . . . and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p ¶¶ 1,4 (emphasis added); see Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988) ("To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations."). Moreover, the ALJ is required to "include a narrative discussion describing how

the evidence supports each conclusion . . . . and describ[ing] the maximum amount of each work-related activity the individual can perform based on the evidence available." SSR 96-8p. However, at no point in the decision did the ALJ express Plaintiff's exertional capabilities on a function-by-function basis. Nor did the ALJ provide the required narrative description of how the evidence supported each conclusion. This was error. See 20 C.F.R. § 402.35(b)(1) (noting that the ALJ is bound by the agency's rulings).

21. The ALJ also erred when she failed to address the FCE performed in October of 1991. The physical therapist who performed the FCE indicated that Plaintiff could sit in 30 minutes increments, stand in 10 minute increments and walk "occasionall[y], [for] moderate distances." Tr. at 120. The postural limitations suggested by the therapist appear to conflict with the ALJ's conclusion that Plaintiff was capable of performing the full range of light work. An unusual postural limitation or a need to alternate positions may erode the occupational base and preclude the ALJ's conclusive reliance on the grids at step five. See Scott v. Shalala, 30 F.3d 33 (5th Cir. 1994) (citing Gallant v. Heckler, 753 F.2d 1450, 1457 (9th Cir.1984) (noting that a VE should be consulted in cases of unusual limitations on the ability to sit or stand).

22. The Court does not know what weight, if any, the ALJ gave this evidence. While the ALJ need not give controlling weight to the opinion of a physical therapist, she "must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).

23. I find the FCE to be significantly probative in this case because it contains objective evidence of Mr. Romero's work-related abilities and the therapist's opinions are based on the

tests and observations carried out during the administration of the FCE. Accordingly, this matter should be remanded for consideration and discussion of the FCE conducted in October of 1991.

### Recommended Disposition

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse **[Doc. 6]** be granted and that this case be remanded to the Commissioner for additional proceedings to include: (1) Reassessment of the Plaintiff's credibility; (2) Reassessment of the Plaintiff's residual functional capacity in light of the reassessment of Plaintiff's credibility, to include consideration of the FCE conducted on October 3, 1991 and a function-by-function analysis of the Plaintiff's exertional capabilities; and (3) Additional proceedings at step five of the sequential evaluation process, to include consultation with a vocational expert, if necessary.

Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE